**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| DRAKE CARPENTER, ) | |
| ) | |
| Plaintiff, ) | Case Number: 23-cv-17019 |
| ) | |
| v. ) | |
| ) | |
| THOMAS J. DART in his official capacity; ) | |
| NICHOLAS SCOUFFAS, in his individual ) | |
| capacity, NICOLE PAGANI, in her individual ) | |
| capacity, and the COUNTY OF COOK, ILLINOIS, ) | |
| as indemnitor, ) | |
| ) | |
| Defendants. ) | JURY DEMANDED |

## COMPLAINT

DRAKE CARPENTER (Drake or Plaintiff), by and through his attorney, Cass Thomas Casper, Esq., DISPARTI LAW GROUP, P.A., states as follows for his Complaint against Thomas J. Dart (Dart), Sheriff of Cook County, Illinois, in his official capacity, Nicholas Scouffas (Scouffas), in his individual capacity, Nicole Pagani (Pagani), in her individual capacity, and the County of Cook, Illinois as indemnitor.

## NATURE OF THIS CASE

1. This case involves a long-time Sheriff's Office employee who has been placed in the administrative leave "twilight zone" by Defendant Scouffas for unknown reasons, except bald rumor from other officers that it has something to do with a double-dipping investigation into officers on the compound.

2. The first part of Plaintiff's case is that Drake has been placed on "administrative leave without pay" since **March 25, 2022**, a status he has remained in for all that time without updates, recourse, or anything happening whatsoever.

3. Plaintiff, too, has done nothing wrong, has no involvement with any double-dipping, knows

nothing about any double-dipping occurrences, and, worse yet, he does not even know if that has anything to do with why he is in this ongoing and unexplained no pay status. It could be that, it could be something else – Plaintiff does not know.

4. This is an abuse of government power and Drake needs Court intervention to help him.

5. At the same time, it is bad policy for a government that touts good treatment of its workers, and seeks to attract quality people to join its ranks and steer its ship, to treat long time servants like Drake in this manner.

6. The second part of Drake's case involves the events of March 23, 2022. On that date, he was called into the office of the Executive Director of the Cook County Department of Corrections (CCDOC), he there encountered Sheriff's Office of Professional Review (OPR) Investigator Nicole Pagani, who told him that he was under investigation, and then directed that he be placed in an adjacent room, where he was required to remain without being free to leave for approximately three hours under constant supervision.

7. Plaintiff was seized during this incident, without being read his rights and without probable cause, and it violated the Fourth Amendment.

8. Plaintiff brings claims for a Fourteenth Amendment deprivation, a Fourth Amendment deprivation, a common law writ of certiorari, a declaratory judgment, and indemnification.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiff's claim pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment of the United States Constitution.

10. Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367 because the factual allegations and claims are so related as to form part of the same case and controversy.

11. This Court has jurisdiction to award attorneys' fees pursuant to 42 U.S.C. § 1988.

12. Venue is proper in this Court because Defendants have their principal places of operation

in Cook County, Illinois, and the acts and omissions giving rise to Plaintiff's claims have occurred in Cook County, Illinois.

## PARTIES

13. Plaintiff is a legal adult, a resident of Kane County, Illinois and has been at all times relevant an Assistant Executive Director (AED) for the CCDOC within the Cook County Sheriff's Office (CCSO).

14. Plaintiff was directly appointed to his AED position from a merit rank position of Correctional Sergeant.

15. Plaintiff continues to retain his merit rank position of Sergeant while serving in his direct appointment position of AED.

16. Defendant Dart is a legal adult, a resident of Cook County, Illinois, and the duly-elected Sheriff of Cook County.

17. Defendant Scouffas is a legal adult occupying the title of General for the CCSO, but performing operations manager functions, including duties such as placing Plaintiff on administrative leave without pay.

18. Defendant Pagani is a legal adult and a Sheriff's OPR Investigator.

19. Defendant Cook County, Illinois is a unit of local government with indemnification responsibilities pursuant to the Illinois' Tort Immunity Act. It is named solely in its capacity as indemnitor of the other Defendants.

## FACTS COMMON TO ALL COUNTS

20. On March 23, 2022, Plaintiff was working his usual shift at CCDOC when he was notified over his radio to come to the Executive Director's Office of the CCDOC, an office in Building 5.

21. When he arrived, Plaintiff encountered Defendant Pagani, who advised him that he was

3

under investigation, that he was to surrender his County credentials, County phone, County laptop, Apple watch, and personal phone, and that he was to sit in the adjacent room until called for.

22. Plaintiff asked Pagani the reason for the investigation, she stated that it was confidential, and that he would be required to answer questions when called for.

23. Pagani then accompanied Plaintiff to an adjacent room with another unknown OPR employee, where another CCSO employee, David Chiko (Chiko) was sitting at a table.

24. Another unknown OPR employee told Plaintiff not to talk to Chiko while he was detained in this room.

25. Plaintiff then remained in that room for approximately three to four hours under constant supervision by this unknown OPR employee. At all times, this OPR employee had a gun on his hip and a gold badge displayed on his person.

26. At no time during Plaintiff's detention in this room, was he allowed to leave the premises as, most notably, he asked if he could go to the bathroom several times, and the OPR employee told him he would have to escort him.

27. Plaintiff suffers from a medical condition that makes him have to urinate more frequently when under stress, and he asked to go to bathroom about five times because he was so stressed out during this incident. Each time, the unknown OPR investigator escorted him to and from the men's bathroom nearby, and stood outside the bathroom door while Drake was inside.

28. At no time was Plaintiff read his rights or given any information about why he was being detained.

29. After about three to four hours in this room under constant supervision, Plaintiff was advised by Pagani that he could leave the CCDOC, and he was escorted to the exit of Building 5, and then he was allowed to leave the compound.

30. On March 25, 2022, Plaintiff was placed on administrative leave without pay via a

Memorandum authored by Defendant Scouffas. A true and accurate copy of this Memorandum is attached hereto as Exhibit 1.

31. The Memorandum stated that Plaintiff had been identified as "having committed misconduct in violation of the Cook County Sheriff's Office's Policies and Procedures." *See* Exhibit 1.

32. Plaintiff has never been called to OPR to be interviewed regarding any allegations of misconduct, nor has any superior in his chain of command interviewed him relative to any claims of misconduct.

33. To date, Plaintiff has no knowledge whatsoever of the reason for his administrative leave without pay, except for vague and speculative rumors being circulated by other CCDOC staff.

34. The vague and speculative rumors from other officers are that a number of CCDOC officers may have been working for Blue Star Security while also being paid to work at the CCDOC, that is, that they were "double dipping."

35. The trouble is, Plaintiff has never worked for Blue Star Security, has no relationship with Blue Star Security and has nothing whatsoever to do with Blue Star Security either directly or indirectly. Blue Star Security is, indeed, in another universe from Plaintiff.

36. Plaintiff, too, has never assisted any officer with double dipping, would not approve of any such thing, would report any such thing if he were aware of it, and wants and has had nothing to do with such an outrageous and wrongful practice.

37. Too, the Blue Star Security rumors are just that, and Plaintiff does not even know if, indeed, those rumors have anything to do with his actual suspension.

38. Plaintiff has never been given a *Loudermill* hearing, nor has he been given any pre-

administrative leave process whatsoever, including an explanation of any evidence against him, allegations of misconduct, notification of the basis for the claims of misconduct, nor an opportunity to respond.

39. It cannot be gainsaid: Plaintiff has no idea what he has been suspended for, has not engaged in any acts of misconduct to his knowledge, has not violated any Sheriff's Policies to his knowledge, does not want to have engaged in any misconduct, would not knowingly engage in any misconduct, and, indeed, Plaintiff is and has always thought he was a high-performing member of the CCSO until this awful, unexplained suspension issued at the hand of Scouffas.

## COUNT 1 - DEPRIVATION OF PROCEDURAL DUE PROCESS OF THE FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983
(Plaintiff v. Defendant Scouffas)

40. Plaintiff restates, realleges, and incorporates by reference herein Paragraph one through 39 as if fully restated herein.

41. Plaintiff at all times has had a protected property interest in his employment because he occupies a Merit Board-recognized "merit rank" of Correctional Sergeant separate and apart from his appointed position of AED, and he cannot lose his "merit rank" without a hearing before the Cook County Sheriff's Merit Board (Merit Board). *See* 55 ILCS 5/3-7012.

42. In fact, Plaintiff's Sergeant rank "vests"[1] and he continues to occupy it during

---

[1] The Court's decision in *Consolino v. Dart* suggest they do not vest, however, that decision was made before former Sheriff's Compliance Officer Robert Egan testified in a deposition in that case in a manner that showed, indeed, the ranks do "vest," and before various Articles of SEAM were discovered that suggest so as well. *See Consolino v. Dart*, 17-cv- 09011, 2019 WL 4450498 at *3-4 (N.D. Ill. 9/17/2019) (J. Dow). With great respect to the Court in *Consolino*, this issue was not as factually developed as it needed to have been at the time of the *Consolino* motion to dismiss ruling, and Plaintiff here wants to make the case that these ranks do vest. The facts here are also different from *Consolino*: SEAM has since been changed possibly several times, his rank prior to appointment to AED was Correctional Sergeant (in *Consolino* some held the position of Chief, which is itself uncertain as to merit status), and Plaintiff has not been fired as a result of a possible layoff or termination, but is on an alleged misconduct-based administrative leave with no pay – precisely the kind of deprivation that the *Loudermill* "mistaken check" procedure was intended to protect against.

6

appointments to the AED position because SEAM Article Z allows employees holding "direct appointment" positions to transfer back into a rank position on request. *See* SEAM, Art. Z, § Z3.5(a).[2] Plaintiff, accordingly, continues to hold his merit rank position of Correctional Sergeant when he was appointed AED.

43. Former CCSO Compliance Officer Robert Egan, indeed, testified in a deposition in *Consolino, et al. v. Dart, et al.*, 17-cv-09011, that officers do not ever lose their merit ranks except for resigning, being terminated at the Merit Board, or death, stating:

### EGAN PAGE 53

4 BY MR. LINDEN
5 Q. Can an employee lose his or her merit rank?
6 MR. LEINENWEBER: Same objections. Go
7 ahead, Bob.
8 THE WITNESS: Yes.
9 BY MR. LINDEN:
10 Q. I believe your answer was yes?
11 **A. Yes.**
12 Q. One way a person could lose it would be
13 through the Merit Board under disciplinary
14 charges, correct?
15 MR. LEINENWEBER: Same objections.
16 THE WITNESS: That's correct.
17 BY MR. LINDEN:
18 Q. And the Sheriff could file a complaint for
19 misconduct if the Merit Board ruled against him
20 and they got fired. In that case, they would no
21 longer have a merit rank; is that fair?
22 MR. LEINENWEBER: Same objections. Go
23 ahead.
24 THE WITNESS: That's correct.

### EGAN PAGE 54

2 Q. And another way you could lose a merit rank
3 could be if you retire, correct?
4 MR. LEINENWEBER: Same objections. Go
5 ahead.
6 THE WITNESS: I believe so.
7 BY MR. LINDEN:

---

[2] SEAM-Article-Z-Direct-Appointment-List-updated-6-1-23.pdf (cookcountysheriffil.gov)

```
 8 Q. But unless you retire or go through the
 9 Merit Board or die, you can't lose your merit
10 rank; isn't that fair?
11 MR. LEINENWEBER: Objection to form,
12 foundation, assumes facts not in evidence, calls
13 for a legal conclusion and argumentative and
14 relevance. Go ahead.
15 THE WITNESS: That's correct.
```

*Robert Egan Deposition* at 53-54 (*Consolino, et al. v. Dart, et al.*, 17-cv-09011).

44. Robert Egan's testimony confirms that Plaintiff did not lose his merit rank of Sergeant during his appointment to AED, which is buttressed by the language of SEAM Article Z.

45. Plaintiff was deprived of his protected property interest with no process whatsoever to ensure against a mistaken deprivation, including that he was never sent to a *Loudermill* hearing, given an explanation of evidence against him, nor given an opportunity to respond to any evidence against him.

46. Indeed, Plaintiff does not know if there is even any evidence against him, does not know what the allegations are against him except for the speculative rumors, and has no idea why he is in his current leave without pay status.

47. Defendant Scouffas has, accordingly, deprived Plaintiff of his protected property interest without any process whatsoever in violation of procedural due process under the Fourteenth Amendment.

48. At all times, Defendant Scouffas acted under color of law in placing Plaintiff on administrative leave without pay by virtue of his operations manager functions.

49. Plaintiff has suffered damages as a result of Defendant's deprivation, including job loss, loss of pay and benefits, emotional distress, and other compensatory losses.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant Scouffas, and enter and order all

appropriate relief, including for compensatory damages in the amount of Plaintiff's lost salary and benefits, for emotional distress, and for reasonable attorneys' fees and costs of this suit.

## COUNT 2 – ILLINOIS STATE LAW WRIT OF CERTIORARI
(Plaintiff v. Sheriff of Cook County in his official capacity)

50. Plaintiff restates, realleges, and incorporates by reference herein Paragraph one through 39 as if fully restated herein.

51. A common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review. *Smith v. Department of Public Aid,* 67 Ill.2d 529, 541 (1977).

52. At all times, the Sheriff of Cook County via Defendants Dart (in his individual capacity) and Scouffas, placed Plaintiff on administrative leave without pay without any recourse, without any ability to learn what it is about, without any ability to present his side of the facts (which, indeed, is that he not committed misconduct and has no idea why this has happened to him), and without any mode of review available.

53. Dart's and Scouffas' actions in placing Plaintiff on administrative leave is an "administrative action" as contemplated by *Smith* and other cases and, therefore, it is reviewable via writ of certiorari given that there is no other mode of review.

54. No statutory or other prohibition exists on this Court reviewing Plaintiff's administrative leave without pay.

55. Plaintiff, accordingly, seeks a writ of certiorari from this Court seeking to reverse his administrative leave without pay status as arbitrary and capricious, without a rational basis, and erroneous and mistaken, as well as to make him whole and order him reinstated.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendants, and enter and order all appropriate relief,

including for reversal of Plaintiff's administrative leave status, reinstatement to his AED position and/or Sergeant position, and make whole relief in the amount of Plaintiff's lost salary and benefits.

### COUNT 3 – ILLINOIS STATE LAW DECLARATORY JUDGMENT
(Plaintiff v. Sheriff of Cook County in his official capacity)

56. Plaintiff restates, realleges, and incorporates by reference herein Paragraph one through 39 as if fully restated herein.

57. At all times, the Sheriff of Cook County via Defendants Dart (in his individual capacity) and Scouffas, placed Plaintiff on administrative leave without pay without any recourse, without any ability to learn what it is about, without any ability to present his side of the facts (which, indeed, is that he not committed misconduct and has no idea why this has happened to him), and without any mode of review available.

58. Plaintiff seeks a declaratory judgment that his administrative leave status is arbitrary and capricious, not supported by a rational basis, and contrary to law.

59. Plaintiff has a tangible interest in this dispute in that his pay and benefits have been suspended since March 25, 2022 and continue to be suspended.

60. Defendants have an opposing legal interest in, presumably, defending their rights to suspend Drake without pay with no explanation or recourse whatsoever.

61. An actual controversy exists between Plaintiff and Defendants as to the legal validity of his administrative leave without pay.

62. Plaintiff, accordingly, seeks a declaratory judgment from this Corut seeking to reverse his administrative leave without pay status as arbitrary and capricious, without a rational basis, and erroneous and mistaken, as well as that he is entitled to be made whole and reinstated.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendants, and enter and order all appropriate relief,

including for reversal of Plaintiff's administrative leave status, reinstatement to his AED position and/or Sergeant position, and make whole relief in the amount of Plaintiff's lost salary and benefits.

### COUNT 4 – DEPRIVATION OF RIGHT TO BE FREE FROM UNLAWFUL SEIZURE UNDER THE FOURTH AMENDMENT VIA 42 U.S.C. § 1983
(Plaintiff v. Defendant Pagani)

63. Plaintiff restates, realleges, and incorporates by reference herein Paragraph one through 39 as if fully restated herein.

64. On or about March 23, 2022, Defendant Pagani directed that Plaintiff's person be seized when he was in the Executive Director's office and taken to an adjacent room.

65. Defendant Pagani was acting under color of law when she did so as it was under the purview of her job duties as OPR investigator.

66. Pagani and the other unknown individual, acting at Pagani's direction, then accompanied Plaintiff to the adjacent room.

67. Plaintiff was at no time read his rights.

68. Plaintiff was at no time advised why he was being seized.

69. Plaintiff was required to remain in this room under the constant supervision of the unknown OPR employee and was not free to leave, except to take bathroom breaks for which he was escorted, watched outside the bathroom, and escorted back into the adjacent room under constant surveillance.

70. Plaintiff's person was seized during this incident, without probable cause to do so and without having been read his rights.

71. All of this was orchestrated and conducted by Defendant Pagani.

72. Plaintiff suffered damages as a result of this seizure, including emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant Pagani, and enter and order all appropriate

relief, including for compensatory damages in the amount of $10,000 and for reasonable attorneys' fees and costs of this suit.

## COUNT 5 – INDEMNIFICATION
(Plaintiff v. Cook County, Illinois)

73. Illinois statute provides that a local public entity such as Cook County, Illinois is obligated to assume financial responsibility for the actions committed by its officials or employees such as Thomas J. Dart and Scouffas. *See* 745 ILCS §§ 10/1-202, 10/2-302, and 10/9-102.

74. Defendant Cook County, Illinois is obligated to assume such financial responsibility for the other Defendants hereto.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order directing Cook County, Illinois to pay, indemnify, and assume financial responsibility for the actions and/or omissions committed by Defendants for the harms they caused to Plaintiff alleged herein.

## JURY DEMANDED

*Dated:  December 22, 2023*

                                              Respectfully submitted,

                                              **DRAKE CARPENTER**

                                              */s/ Cass T. Casper*
By:_____
                                              Plaintiff's Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
E: ccasper@dispartilaw.com