## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DRAKE CARPENTER and ARACELIS GOTAY, ) | |
| ) | |
| Plaintiffs, ) | Case Number: 23-cv-17019 |
| ) | |
| v. ) | The Honorable Matthew Kennelly |
| ) | |
| THOMAS J. DART in his official capacity; ) | Magistrate Judge Sheila M. Finnegan |
| NICHOLAS SCOUFFAS, in his individual ) | |
| capacity, NICOLE PAGANI, in her individual ) | |
| capacity, and the COUNTY OF COOK, ILLINOIS, ) | |
| as indemnitor, ) | |
| ) | |
| Defendants. ) | JURY DEMANDED |

## FIRST AMENDED COMPLAINT

DRAKE CARPENTER (Drake or Plaintiff) and ARACELIS GOTAY (Aracelis or

Plaintiff), by and through their attorney, Cass Thomas Casper, Esq., DISPARTI LAW GROUP,

P.A., state as follows for their Complaint against Thomas J. Dart (Dart), Sheriff of Cook County,

Illinois, in his official capacity, Nicholas Scouffas (Scouffas), in his individual capacity, Nicole Pagani

(Pagani), in her individual capacity, and the County of Cook, Illinois as indemnitor.

## NATURE OF THIS CASE

1.  This case involves Drake, a 22-year Sheriff's Office employee with no prior discipline, who

has been placed in the administrative leave "twilight zone" by Defendant Scouffas for unknown

reasons, except bald rumor from other officers that it has something to do with a double-dipping

investigation into officers on the compound.

2.  This case also involves Aracelis, a nearly 14-year employee with no prior discipline, who has

also been placed in the administrative leave "twilight zone" by Defendant Scouffas for unknown

reasons, except for the same speculative rumors.

3.  The first part of Plaintiff's case is that Drake has been placed on "administrative leave

without pay" since **March 25, 2022**, a status he has remained in for all that time without updates, recourse, or anything happening whatsoever.

4.    Aracelis, too, has been in administrative leave since on or about **March 25, 2022**, a status she has remained in for all that time without updates, recourse, or anything happening whatsoever.

5.    Plaintiffs, too, have done nothing wrong, have no involvement with any double-dipping, know nothing about any double-dipping occurrences, and, worse yet, do not even know if that has anything to do with why they are in this ongoing and unexplained no pay status. It could be that, it could be something else – Plaintiffs do not know.

6.    This is an abuse of government power and Drake and Aracelis need Court intervention to help them.

7.    At the same time, it is bad policy for a government that touts good treatment of its workers, and seeks to attract quality people to join its ranks and steer its ship, to treat long time servants like Drake and Aracelis in this manner.

8.    The second part of this case for Drake involves the events of on or about March 23, 2022. On that date, he was called into the office of the Executive Director of the Cook County Department of Corrections (CCDOC), he there encountered Sheriff's Office of Professional Review (OPR) Investigator Pagani, who told him that he was under investigation, and then directed that he be placed in an adjacent room, where he was required to remain without being free to leave for approximately three hours under constant supervision.

9.    Drake was seized during this incident, without being read his rights and without probable cause, and it violated the Fourth Amendment.

10.  Much the same thing happened to Aracelis on or about March 25, 2022. She was ordered into the office of the Executive Director, there encountered Pagani and other unknown OPR investigators, and was ordered to wait in adjoining office without the freedom to leave for about

three hours. Indeed, she tried multiple times to open the door to the office to see what was going on and/or to go to the bathroom, and a man was posted outside the door, advised she was not allowed to leave, and closed the door for her. Plaintiff had no means of exit during this time, and was never read her rights.

11. Plaintiffs were both arrested during the aforementioned incidents without having been read their rights.

12. Plaintiffs bring claims for Fourteenth Amendment deprivations, Fourth Amendment deprivations, common law writ of certiorari, declaratory judgment, and indemnification.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment of the United States Constitution.

14. Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367 because the factual allegations and claims are so related as to form part of the same case and controversy.

15. This Court has jurisdiction to award attorneys' fees pursuant to 42 U.S.C. § 1988.

16. Venue is proper in this Court because Defendants have their principal places of operation in Cook County, Illinois, and the acts and omissions giving rise to Plaintiff's claims have occurred in Cook County, Illinois.

## PARTIES

17. Plaintiff Drake is a legal adult, a resident of Cook County, Illinois and has been at all times relevant an Assistant Executive Director (AED) for the Cook County Department of Corrections (CCDOC) within the Cook County Sheriff's Office (CCSO).

18. Plaintiff Drake was directly appointed to his AED position from a merit rank position of Correctional Sergeant.

19. Plaintiff Drake continues to retain his merit rank position of Sergeant while serving in his

3

direct appointment position of AED.

20. Plaintiff Aracelis is a legal adult, a resident of Cook County, Illinois and has been at all times relevant a Director for the CCDOC within the CCSO.

21. Plaintiff Aracelis was directly appointed to her Director position from a merit rank of Correctional Sergeant in or about February 2021.

22. Plaintiff Aracelis continues to retain her merit rank position of Sergeant while serving in her direct appointment position of Director.

23. Both Plaintiffs are salaried and do not work overtime nor are they entitled to any pay over and above their salaries, regardless of the number of hours they work per week.

24. Defendant Dart is a legal adult, a resident of Cook County, Illinois, and the duly-elected Sheriff of Cook County.

25. Defendant Scouffas performs operations management functions for the CCSO, including duties such as placing Plaintiff on administrative leave without pay, signing off on documents, and like and related perfunctory, non-substantive duties.

26. Defendant Pagani is a legal adult and a Sheriff's OPR Investigator.

27. Defendant Cook County, Illinois is a unit of local government with indemnification responsibilities pursuant to the Illinois' Tort Immunity Act. It is named solely in its capacity as indemnitor of the other Defendants.

## CONSENT TO PROCEED IN SAME SUIT

28. Both Plaintiffs have given informed consent to proceed in the same suit.

## FACTS COMMON TO ALL COUNTS

### I.    Facts Related To Plaintiff Drake.

29. On March 23, 2022, Plaintiff was working his usual shift at CCDOC when he was

notified over his radio to come to the Executive Director's Office of the CCDOC, an office in Division 5.

30. When he arrived, Plaintiff encountered Defendant Pagani, who advised him that he was under investigation, that he was to surrender his County credentials, County phone, County laptop, Apple watch, and personal phone, and that he was to sit in the adjacent room until called for.

31. Plaintiff asked Pagani the reason for the investigation, she stated that it was confidential, and that he would be required to answer questions when called for.

32. Pagani then accompanied Plaintiff to an adjacent room with another unknown OPR employee, where another CCSO employee, David Chiko (Chiko) was sitting at a table.

33. Another unknown OPR employee told Plaintiff not to talk to Chiko while he was detained in this room.

34. Plaintiff then remained in that room for approximately three to four hours under constant supervision by this unknown OPR employee. At all times, this OPR employee has a gun on his hip and a gold badge displayed on his person.

35. At no time during Plaintiff's detention in this room, was he allowed to leave the premises as, most notably, he asked if he could go to the bathroom, and the OPR employee told him he would have to escort him.

36. At no time was Plaintiff read his rights or given any information about why he was being detained.

37. After about three to four hours in this room under constant supervision, Plaintiff was advised by Pagani that he could leave the CCDOC, and he was escorted to the exit of Division 5, and then he left the compound.

38. On March 25, 2022, Plaintiff was placed on administrative leave without pay via a

5

Memorandum authored by Defendant Scouffas. A true and accurate copy of this Memorandum is attached hereto as Exhibit 1.

39. The Memorandum stated that Plaintiff had been identified as "having committed misconduct in violation of the Cook County Sheriff's Office's Policies and Procedures." *See* Exhibit 1.

40. Plaintiff has never been called to the Sheriff's Office of Professional Review (OPR) to be interviewed regarding any allegations of misconduct, nor has any superior in his chain of command interviewed him relative to any claims of misconduct.

41. To date, Plaintiff has no knowledge whatsoever of the reason for his administrative leave without pay, except for vague and speculative rumors being circulated by other CCDOC staff.

42. The vague and speculative rumors from other officers are that a number of CCDOC officers may have been working for Blue Star Security while also being paid to work at the CCDOC, that is, that they were "double dipping."

43. The trouble is, Plaintiff has never worked for Blue Star Security, has no relationship with Blue Star Security and has nothing whatsoever to do with Blue Star Security either directly or indirectly. Blue Star Security is, indeed, in another universe from Plaintiff.

44. Plaintiff, too, has never assisted any officer with double dipping, would not approve of any such thing, would report any such thing if he were aware of it, and wants and has had nothing to do with such an outrageous and wrongful practice.

45. Too, the Blue Star Security rumors are just that, and Plaintiff does not even know if, indeed, those rumors have anything to do with his actual suspension.

46. Plaintiff has never been given a *Loudermill* hearing, nor has he been given any pre-

administrative leave process whatsoever, including an explanation of any evidence against him, allegations of misconduct, notification of the basis for the claims of misconduct, nor an opportunity to respond.

47.  It cannot be gainsaid: Plaintiff has no idea what he has been suspended for, has not engaged in any acts of misconduct to his knowledge, has not violated any Sheriff's Policies to his knowledge, does not want to have engaged in any misconduct, would not knowingly engage in any misconduct, and, indeed, Plaintiff is and has always thought he was a high-performing member of the CCSO until this awful, unexplained suspension issued at the hands of Dart and Scouffas.

48.  Drake has an incredible resume from his time at the CCSO, and is a member of the National Guard:

## PROFESSIONAL SUMMARY

Over 20 years of experience working in Law Enforcement. Responsible for the execution of operations for Cook County Sheriff's Department. Extensive experience in working and responding to emergency situations. Ensure safety and security for all detainees and employees daily. Assist with the safety of the community by aiding those areas that need added security.

Featured on the MSNBC TV Show "The Squeeze" showing the behind the scenes of the Intelligence Unit of the Largest Single Site Jail in the United States; where prominent gangs in the Chicagoland area have either originated or have thrived into the criminal organizations they have become.

Proud member of the United States Military in the branch of the Army National Guard. Completed my service setting the path in life that led to my career in Law Enforcement that has positively impacted the succession of my future endeavors within the Cook County Sheriff's Office.

## EXPERIENCE

JULY 2020 – CURRENT
**ASSISTANT EXECUTIVE DIRECTOR (AED),** COOK COUNTY SHERIFF'S OFFICE

- Overseeing the Daily Operations of areas assigned.
- Supervise and Manage the Emergency Response Team (ERT) - A team of highly trained correctional officers tasked with responding to incidents, riots, cell extractions or disturbances in the Jail, possibly involving uncooperative or violent detainees.
- Daily meetings and discussions of security and betterment of the department.

APRIL 2015 – JULY 2020
**CORRECTIONAL SERGEANT,** COOK COUNTY SHERIFF'S OFFICE

- Responsible for the supervision of sworn staff members and inmates.
- Ensure compliance in all areas of the building.
- Coordinate the shift's daily activities and maintain a safe and effective environment.
- Facilitate decreases in disturbances and incidents.
- Overseeing the daily operations of areas assigned.
- Special Management Team (SMT) – Segregation Unit tasked with the housing of detainees that have violated rules and regulations of the department and have been issued a preset number of days to be served with restricted privileges.

- Emergency Response Team (ERT) – A team of highly trained correctional officers tasked with responding to incidents, riots, cell extractions or disturbances in the Jail, possibly involving uncooperative or violent detainees.
- Cook County Sheriff's Training Academy – Responsible for the training of new and current Sheriff's Office employees including Officers, Deputy Sheriffs, Police Officers, Sergeants, Lieutenants, and other administrative roles.

**CORRECTIONAL GANG INVESTIGATOR,** COOK COUNTY SHERIFF'S OFFICE
- Conduct interviews with inmates.
- Gather information of known gang members.
- Gather information for unsolved crimes.
- Gather information for weapons and drug recoveries.
- Communicate with other agencies and facilitate interviews and gather information to assist with open cases.

2009– CURRENT
**MEMBER,** MCIO
- Motorcycle Intel Organization
- Responsible for gathering intel and sharing with other LE Agencies surrounding Outlaw Motorcycle Gangs throughout the state and country.

JULY 2000– APRIL 2015
**CORRECTIONAL OFFICER,** COOK COUNTY SHERIFF'S OFFICE
- Responsible for overseeing individuals who have been arrested and or are awaiting trail
- Maintaining order and security
- Maintaining reports, records, and data logs
- Supervising detainees
- Maintaining voluntary compliance

1990 – 1998
**MILITARY POLICE – CORRECTIONAL SPECIALIST,** US ARMY NATIONAL GUARD
- Follow all directives and perform them at the highest level
- Military Police Graduate
- Multiple deployments to include Fort Clayton Panama and Fort Leavenworth Kansas USDB
- Southern Illinois Disaster and flood relief

## II.    Facts Related To Aracelis.

49.  On or about March 25, 2022, Plaintiff Aracelis was notified to come to the Executive Director's Office in Building 5.

50.  Once she arrived there, she encountered Pagani and other unknown OPR Investigators.

9

51. Pagani was vicious and mean to Aracelis for unknown reasons, telling her she was under investigation, and ordering her to go into an adjoining office and wait to be called.

52. At no time did Pagani or anyone else present advise Aracelis of the reasons for any such investigation, why she had been called in, or why she was being required to wait in an adjoining room.

53. Pagani walked Plaintiff to the adjoining room, and the door was closed, leaving Plaintiff with no means of egress.

54. At no time was Plaintiff read her rights.

55. Plaintiff waited in the room for approximately four hours.

56. She tried to leave to room by the only door multiple times in order to see what was happening and/or to go the bathroom.

57. A man standing outside the door in advised her she could not leave and closed the door, with Aracelis inside.

58. Plaintiff was extremely distressed while inside the room, and had to go to the bathroom quite seriously because of her heightened blood pressure, but was not allowed to go.

59. After approximately four hours in this room, Plaintiff was escorted out of the room and directed to leave the compound and go home.

60. The next day Plaintiff was sent a memorandum like that given to Plaintiff Drake stating that she was on administrative leave without pay.

61. The memorandum was from Defendant Scouffas, and contained no reasons or explanation for this administrative leave status.

62. Plaintiff has been on administrative leave ever since.

63. No one from the CCSO has ever advised Plaintiff of the reasons for her leave, given her any

updates, or otherwise called her in for an interview, despite that Plaintiff has inquired multiple times with command.

64. Indeed, Plaintiff Aracelis, like Plaintiff Drake, has no idea what the reason is for her administrative leave without pay, nor why it has gone on now nearing two years this upcoming March.

65. Plaintiff has had to seek other employment in the meantime and is unsure what to put on her applications given that she has not been terminated and has no idea what is happening with her Sheriff's job.

66. Like Plaintiff Drake, Plaintiff Aracelis has an incredible resume of her time with the CCSO:

## PERSONAL ATTRIBUTES

- Is a driven and focused individual with a proven work ethic. Can continually adapt fast and learn swiftly.
- Strives to make sure every task is completed beyond expectations and ensures that satisfaction is obtained by the client or individual that is being serviced.
- Is continually developing leadership abilities to ensure growth within any organization.
- Looks at every challenge as a learning opportunity, and shares the knowledge learned with others to help develop self-esteem while promoting a succession-based work environment.

## EMPLOYMENT

**Director (Incident Command, Fugitive, K9, TOR, HEG, CCEMRS, SHARP) Cook County Sheriff's Department    February 2021 through Present**

- Oversaw the development and execution of many operations and programs conducted through the entire Cook County Sheriff's Office
- Was responsible for the Incident Command Center throughout the COVID-19 pandemic and contributed to implementing long term and data collection and capture which is still utilized presently.
- Helped cultivate and grow the Cook County Sheriff's "Tails of Redemption" (TOR) Program that assisted with partnering incarcerated individuals with dogs that are slated to be euthanized in over populated shelters, giving both groups an opportunity for a second chance at life.
- Oversaw the Fugitive Unit and ran operations with the United States Marshal's Great Lakes Regional Fugitive Task Force to catch AWOL individuals and violent offenders throughout Cook County.
- Ran and expanded the K9 unit to include 21 dogs of various specialties, (Dual and Single Purpose Narcotics, Explosives, Trailing and Gun Detection)
- Assisted with the operation and development of the Cook County Sheriff Hate and Extremist Group (HEG), which tracked and reported both International and Domestic Terrorism while monitoring cyber security.
- Was a liaison for the Cook County Sheriff's Office with Cook County Emergency Management and Regional Security (CCEMRS). Helped initiate grant proposals and resources for operations and programs with the assistance of the Homeland Security Office.
- Assisted with the development and implementation of the Cook County Sheriff's Homeless Assistance and Relief Program (SHARP).
- Made various contacts and networking to assist with coordination of various projects and program implementation.
- Has published a few books detailing successful operations as well as coordination efforts.
- Has published reports utilized throughout the department, including one that was featured in the American Jail Association (AJA)'s magazine demonstrating a snapshot report that detailed all pertinent information for the Sheriff himself regarding the COVID-19 pandemic and all aspects of operations for the Sheriff's Department. This report was so important that it was utilized for years, with all department heads reporting for each of their respective units for inclusion in these reports.
- Created and implemented a Critical Incident Command Center which acted as a 24/7 central hub for the department and an repository of data.
- Implemented and was responsible for vaccinating the Cook County Sheriff's Office through the COVID-19 pandemic. Set up an on-location operation to allow the 5,000+ staff members as well as inmates, and other individuals/vendors who worked inside the Cook County Jail to be given an opportunity to be vaccinated on site – eventually paving the way to allow these same individuals to bring their immediate family members to the compound to receive the vaccinations as well.
- Worked with teams in the 6th and 15th Districts in Chicago to assist with crime prevention and violence reduction.
- Worked closely with CPIC (Chicago Police Information Center) and OEMC (Office of Emergency Management Center) during city/county-wide operations and events for intelligence sharing, observation and enforcement action when needed.
- Coordinated and deployed teams from throughout the various units of the Sheriff's Office to assist with the Civil Unrest that was happening throughout the city and county in 2020/2021.
- Assisted with the development of data collection and databases for the Sheriff's Office Intelligence units, especially for the Internal SIU (Strategic Intelligence Unit) and JET (Jail Enforcement Team). Helped developed executive level reports for implementation and distribution to high ranking officials and leadership with the Sheriff's Office, including the Sheriff himself.
- Worked directly with the Cook County Sheriff's Office Warehouse and Supply Chain Management to ensure a smooth flow of logistics needs and supply demand – especially with PPE supplies during the COVID-19 pandemic.
- Helped developed housing plans and mass movement operations inside the Cook County Jail, especially during COVID-19, when social distancing and single housing arrangements were mandatory and intricate to achieve.
- Assisted with the implementation and development of the Therapy Dog Program provided by the Sheriff's Department, and had the honor and privilege to coordinate the opening of a Pet Therapy Room at St. Anthony's Hospital, which was also featured in the Chicago Sun Times and WBBM as well as other news outlets. This program started to help victims in various situations open up and talk as well as provide comfort to individuals dealing with critical situations and other times of need. This program has proven to be a huge success, while recently adding another dog to our ranks in honor of fallen CPD officer, Ella French. This therapy dog's name is Ella and she is a French Porcelane Dog, and was able to meet Ella's mother in the beginning of March for the dedication unveil – with Sheriff Dart being present himself.

**Sergeant (DIV IX/Incident Command)**            **Cook County Sheriff's Department**            **December 2016 through February 2021**

- Supervised staff and inmate daily activities within the facility, maintained facility security through regular inspections to ensure compliance with governing regulations and standards relating to facility maintenance and health and safety of inmates

12

- Assisted the Watch Commander with maintaining established staffing levels by arranging daily assignment sheets, shift coverage, and overtime approval
- Ensured staff were fully trained and that proper conduct, actions and procedures were followed while responding to all incidents, inquiries and calls as needed.
- Reviewed written reports prepared by staff and evaluated staff work performance, while handling a variety of employee problems such as discipline, grievances and time off requests
- Supervised the approved movement of inmates and assisted in the development, implementation and monitoring of programs to modify inmates' attitudes and behaviors
- Acted as a liaison to ensure professionalism and cooperation with the public, civilians, medical staff and other individuals encountered in daily duties, and completed any other administrative and miscellaneous tasks as required daily.
- Created a database tracking system to monitor inmates that were on Rehabilitative Units to ensure they received programs and appropriate time out of their cells each day.

**Business Intelligence, Sworn, Team Leader**      **Cook County Sheriff's Department**      **May 2015 through December 2016**

- Lead a team of staff to mine data and evaluate incident reports while meeting crucial deadlines
- Evaluated data and trends surrounding the types of incidents generated and assisted with the development to address potential deficiencies in the application, and reporting of incidents. Used the database as a logic based application for administration to use when making important decisions.
- Has provided training to sworn and command staff in the use of the incident reporting system developed for the Sheriff's office.
- Has been a part of various projects and development programs within the Cook County Sheriff's office
- Remotely troubleshoots technical issues for staff compound-wide, or referred them immediately to the appropriate contact person through proven successful communication methods.
- Audited and reviewed dashboards to ensure data integrity on a daily basis
- Made daily notifications to administration on reports and/or missing documentation.
- Worked closely to ensure other units were receiving completed signed documentation packets and archiving in shared folders.

**Division IX-Command Post Officer**      **Cook County Sheriff's Department**      **Oct 2012 through May 2015**

- Was responsible for overseeing the Special Management Population to ensure standard compliance was achieved, such as Disciplinary Segregation, Special Incarceration, The Level System, Protective Custody and CPS tiers.
- Worked with various units for data capture and information submission and conducted daily transfers of inmates.
- Assisted the Superintendent and Commanders with information gathering and the development of reports currently utilized by Administration
- Started a grievance database within the division for use by the command staff which received high praise from Susan McCampbell of the Department of Justice.
- Coordinated daily transfers of inmates to ensure all compliance standards were met in regards to amounts of segregation time served, as well as documenting and filing dispositions rendered by the hearing board.

**Sworn Correctional Officer**      **Cook County Sheriff's Department**      **Jul 2010 through Oct 2012**

- Worked at various posts within External Operations and had regular dealings with the public on a daily basis.
- Worked as a Security Officer in Stroger Hospital
- Was cross-trained and mastered various key posts within Division IX, such as: Security, Central Control, Lobby, Holding, Post, Medical Movement, Dental, Dispensary, Court Movement, Food Distribution, Sanitation, Visitation, Recreation and Core Officer.
- Has experience working with numerous maximum security inmates as a tier officer within Division IX.

67. Like Drake, Plaintiff Aracelis can account for all her time worked, does not work secondary, is unaware of any ghost-payrolling or double-dipping, and does not even know if such matters are why she is one leave, and only is able to articulate the issues in this paragraph because of rumors going around the compound that such issues might be what the investigation is about – but Plaintiff does not know for sure.

## COUNT 1 - DEPRIVATION OF PROCEDURAL DUE PROCESS OF THE FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983
(Plaintiff Drake v. Defendant Scouffas)

68. Plaintiff restates, realleges, and incorporates by reference herein Paragraph one through 67 as if fully restated herein.

13

69. Plaintiff at all times has had a protected property interest in his employment because he occupies a Merit Board-recognized "merit rank" of Correctional Sergeant separate and apart from his appointed position of AED, and he cannot lose his "merit rank" without a hearing before the Cook County Sheriff's Merit Board (Merit Board). *See* 55 ILCS 5/3-7012.

70. In fact, Plaintiff's Sergeant rank "vests" and he continues to occupy it during appointments to the AED position because SEAM Article Z allows employees holding "direct appointment" positions to transfer back into a rank position on request. *See* SEAM, Art. Z, § Z3.5(a).[1] Plaintiff, accordingly, continues to hold his merit rank position of Correctional Sergeant when he was appointed AED.

71. Former CCSO Compliance Officer Robert Egan, indeed, testified in a deposition in *Consolino, et al. v. Dart, et al.*, 17-cv-09011, that officers do not ever lose their merit ranks except for resigning, being terminated at the Merit Board, or death, stating:

**EGAN PAGE 53**

4 BY MR. LINDEN
5 Q. Can an employee lose his or her merit rank?
6 MR. LEINENWEBER: Same objections. Go
7 ahead, Bob.
8 THE WITNESS: Yes.
9 BY MR. LINDEN:
10 Q. I believe your answer was yes?
11 **A. Yes.**
12 Q. One way a person could lose it would be
13 through the Merit Board under disciplinary
14 charges, correct?
15 MR. LEINENWEBER: Same objections.
16 THE WITNESS: That's correct.
17 BY MR. LINDEN:
18 Q. And the Sheriff could file a complaint for
19 misconduct if the Merit Board ruled against him
20 and they got fired. In that case, they would no
21 longer have a merit rank; is that fair?
22 MR. LEINENWEBER: Same objections. Go
23 ahead.

---

[1] SEAM-Article-Z-Direct-Appointment-List-updated-6-1-23.pdf (cookcountysheriffil.gov)

24 THE WITNESS: That's correct.

**EGAN PAGE 54**

2 Q. And another way you could lose a merit rank
3 could be if you retire, correct?
4 MR. LEINENWEBER: Same objections. Go
5 ahead.
6 THE WITNESS: I believe so.
7 BY MR. LINDEN:
8 Q. But unless you retire or go through the
9 Merit Board or die, you can't lose your merit
10 rank; isn't that fair?
11 MR. LEINENWEBER: Objection to form,
12 foundation, assumes facts not in evidence, calls
13 for a legal conclusion and argumentative and
14 relevance. Go ahead.
15 THE WITNESS: That's correct.

*Robert Egan Deposition* at 53-54 (*Consolino, et al. v. Dart, et al.*, 17-cv-09011).

72. Robert Egan's testimony confirms that Plaintiff did not lose his merit rank of Sergeant during his appointment to AED, which is buttressed by the language of SEAM Article Z.

73. Plaintiff was deprived of his protected property interest with no process whatsoever to ensure against a mistaken deprivation, including that he was never sent to a *Loudermill* hearing, given an explanation of evidence against him, nor given an opportunity to respond to any evidence against him.

74. Indeed, Plaintiff does not know if there is even any evidence against him, does not know what the allegations are against him except for the speculative rumors, and has no idea why he is in his current leave without pay status.

75. Defendant Scouffas has, accordingly, deprived Plaintiff of his protected property interest without any process whatsoever in violation of procedural due process under the Fourteenth Amendment.

76. At all times, Defendant Scouffas acted under color of law in placing Plaintiff on administrative leave without pay by virtue of his operations manager functions.

77. Defendant Scouffas' actions, too, represent a horrendously poor policy decision because Plaintiff is a highly-esteemed, hard-working, dedicated civil servant without prior workplace issues, and Defendant Scouffas has put him in this leave status without pay for close to two years any way. This is no way for decent human beings to treat one another, no way for a responsible government to treat its career staff, and, indeed, Scouffas' actions here are more like something out of Vladimir Putin's Russian dictatorship.[2]

78. Plaintiff has suffered damages as a result of Defendant's deprivation, including job loss, loss of pay and benefits, emotional distress, and other compensatory losses.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant Scouffas, and enter and order all appropriate relief, including for compensatory damages in the amount of Plaintiff's lost salary and benefits, for emotional distress, and for reasonable attorneys' fees and costs of this suit.

## COUNT 2 - DEPRIVATION OF PROCEDURAL DUE PROCESS OF THE FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983
(Plaintiff Aracelis v. Defendant Scouffas)

79. Plaintiff restates, realleges, and incorporates by reference herein Paragraph one through 67 as if fully restated herein.

80. Plaintiff at all times has had a protected property interest in her employment because she occupies a Merit Board-recognized "merit rank" of Correctional Sergeant separate and apart from her appointed position of Director, and she cannot lose her "merit rank" without a hearing before the Cook County Sheriff's Merit Board (Merit Board). *See* 55 ILCS 5/3-7012.

81. In fact, Plaintiff's Sergeant rank "vests" and she continues to occupy it during

---

[2] This is no exaggeration. Dictatorial governments do exactly this kind of thing with their staff all the time. All The Kremlin's Men: Russian Officials Drop Out Of Sight, Suggesting Post-Mutiny Purges (rferl.org); A Brief History of North Korean Officials Disappearing (and Reappearing) – The Diplomat; Afghanistan: Taliban Kill, 'Disappear' Ex-Officials | Human Rights Watch (hrw.org)

appointments to the Director position because SEAM Article Z allows employees holding "direct appointment" positions to transfer back into a rank position on request. *See* SEAM, Art. Z, § Z3.5(a).[3] Plaintiff, accordingly, continues to hold her merit rank position of Correctional Sergeant when she was appointed Director.

82. Former CCSO Compliance Officer Robert Egan, indeed, testified in a deposition in *Consolino, et al. v. Dart, et al.*, 17-cv-09011, that officers do not ever lose their merit ranks except for resigning, being terminated at the Merit Board, or death, stating:

### EGAN PAGE 53

4 BY MR. LINDEN
5 Q. Can an employee lose his or her merit rank?
6 MR. LEINENWEBER: Same objections. Go
7 ahead, Bob.
8 THE WITNESS: Yes.
9 BY MR. LINDEN:
10 Q. I believe your answer was yes?
11 **A. Yes.**
12 Q. One way a person could lose it would be
13 through the Merit Board under disciplinary
14 charges, correct?
15 MR. LEINENWEBER: Same objections.
16 THE WITNESS: That's correct.
17 BY MR. LINDEN:
18 Q. And the Sheriff could file a complaint for
19 misconduct if the Merit Board ruled against him
20 and they got fired. In that case, they would no
21 longer have a merit rank; is that fair?
22 MR. LEINENWEBER: Same objections. Go
23 ahead.
                    24 THE WITNESS: That's correct.

### EGAN PAGE 54

2 Q. And another way you could lose a merit rank
3 could be if you retire, correct?
4 MR. LEINENWEBER: Same objections. Go
5 ahead.
6 THE WITNESS: I believe so.
7 BY MR. LINDEN:

---

[3] SEAM-Article-Z-Direct-Appointment-List-updated-6-1-23.pdf (cookcountysheriffil.gov)

8 Q. But unless you retire or go through the
9 Merit Board or die, you can't lose your merit
10 rank; isn't that fair?
11 MR. LEINENWEBER: Objection to form,
12 foundation, assumes facts not in evidence, calls
13 for a legal conclusion and argumentative and
14 relevance. Go ahead.
15 THE WITNESS: That's correct.

*Robert Egan Deposition* at 53-54 (*Consolino, et al. v. Dart, et al.*, 17-cv-09011).

83. Robert Egan's testimony confirms that Plaintiff did not lose her merit rank of Sergeant during her appointment to Director, which is buttressed by the language of SEAM Article Z.

84. Plaintiff was deprived of her protected property interest with no process whatsoever to ensure against a mistaken deprivation, including that she was never sent to a *Loudermill* hearing, given an explanation of evidence against her, nor given an opportunity to respond to any evidence against her.

85. Indeed, Plaintiff does not know if there is even any evidence against her, does not know what the allegations are against her except for the speculative rumors, and has no idea why she is in her current leave without pay status.

86. Defendant Scouffas has, accordingly, deprived Plaintiff of her protected property interest without any process whatsoever in violation of procedural due process under the Fourteenth Amendment.

87. At all times, Defendant Scouffas acted under color of law in placing Plaintiff on administrative leave without pay by virtue of his operations manager functions.

88. Defendant Scouffas' actions, too, represent a horrendously poor policy decision because Plaintiff is a highly-esteemed, hard-working, dedicated civil servant without prior workplace issues, and Defendant Scouffas has put her in this leave status without pay for close to two years anyway. This is no way for decent human beings to treat one another, no way for a responsible government

18

to treat its career staff, and, indeed, Scouffas' actions here are more like something out of Vladimir Putin's Russian dictatorship.

89. Plaintiff has suffered damages as a result of Defendant's deprivation, including job loss, loss of pay and benefits, emotional distress, and other compensatory losses.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant Scouffas, and enter and order all appropriate relief, including for compensatory damages in the amount of Plaintiff's lost salary and benefits, for emotional distress, and for reasonable attorneys' fees and costs of this suit.

## COUNT 3 – ILLINOIS STATE LAW WRIT OF CERTIORARI
(Plaintiffs v. Sheriff of Cook County in his official capacity)

90. Plaintiffs restate, reallege, and incorporate by reference herein Paragraph one through 67 as if fully restated herein.

91. A common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review. *Smith v. Department of Public Aid,* 67 Ill.2d 529, 541 (1977).

92. At all times, the Sheriff of Cook County via Defendants Dart (in his individual capacity) and Scouffas, placed Plaintiffs on administrative leave without pay without any recourse, without any ability to learn what it is about, without any ability to present their side of the facts (which, indeed, is that they have not committed misconduct and have no idea why this has happened), and without any mode of review available.

93. Dart's and Scouffas' actions in placing Plaintiffs on administrative leave is an "administrative action" as contemplated by *Smith* and other cases and, therefore, it is reviewable via writ of certiorari given that there is no other mode of review.

94. No statutory or other prohibition exists on this Court reviewing Plaintiffs' administrative

19

leave without pay.

95. Plaintiffs, accordingly, seeks a writ of certiorari from this Court seeking to reverse their administrative leave without pay status as arbitrary and capricious, without a rational basis, and erroneous and mistaken, as well as to make them whole and order him reinstated.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, and against Defendants, and enter and order all appropriate relief, including for reversal of Plaintiffs' administrative leave status, reinstatement to their positions and/or Sergeant positions, and make whole relief in the amount of Plaintiffs' lost salary and benefits.

## COUNT 4 – ILLINOIS STATE LAW DECLARATORY JUDGMENT
### (Plaintiffs v. Sheriff of Cook County in his official capacity)

96. Plaintiffs restate, reallege, and incorporate by reference herein Paragraph one through 67 as if fully restated herein.

97. At all times, the Sheriff of Cook County via Defendants Dart (in his individual capacity) and Scouffas, placed Plaintiffs on administrative leave without pay without any recourse, without any ability to learn what it is about, without any ability to present their side of the facts (which, indeed, is that they have not committed misconduct and have no idea why this has happened), and without any mode of review available.

98. Plaintiffs seek a declaratory judgment that her administrative leave status is arbitrary and capricious, not supported by a rational basis, and contrary to law.

99. Plaintiffs have a tangible interest in this dispute in that their pay and benefits have been suspended since on or about March 25, 2022 and continue to be suspended.

100.     Defendants have an opposing legal interest in, presumably, defending their rights to suspend Drake and Aracelis without pay with no explanation or recourse whatsoever.

101.     An actual controversy exists between Plaintiffs and Defendants as to the legal

20

validity of their administrative leave without pay.

102.     Plaintiffs, accordingly, seek a declaratory judgment from this Court seeking to reverse their leave without pay status as arbitrary and capricious, without a rational basis, and erroneous and mistaken, as well as that they is entitled to be made whole and reinstated.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, and against Defendants, and enter and order all appropriate relief, including for reversal of Plaintiffs' administrative leave status, reinstatement to their positions and/or Sergeant positions, and make whole relief in the amount of Plaintiffs' lost salary and benefits.

## COUNT 5 – DEPRIVATION OF RIGHT TO BE FREE FROM UNLAWFUL SEIZURE UNDER THE FOURTH AMENDMENT VIA 42 U.S.C. § 1983
(Plaintiff Drake v. Defendant Pagani)

103.     Plaintiff restates, realleges, and incorporates by reference herein Paragraph one through 67 as if fully restated herein.

104.     On or about March 25, 2022, Defendant Pagani directed that Plaintiff's person be seized when he was in the Executive Director's office and taken to an adjacent room.

105.     Defendant Pagani was acting under color of law when she did so, ostensibly under the purview of her job duties as OPR investigator.

106.     Pagani and the other unknown individual, acting at Pagani's direction, then accompanied Plaintiff to the adjacent room.

107.     Plaintiff was at no time read his rights.

108.     Plaintiff was at no time advised why he was being seized.

109.     Plaintiff was required to remain in this room under the constant supervision of the unknown OPR employee and was not free to leave.

110.     Plaintiff's person was seized during this incident, without probable cause to do so

and without having been read his rights.

111.     All of this was orchestrated and conducted by Defendant Pagani.

112.     Plaintiff suffered damages as a result of this seizure, including emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff Drake respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant Pagani, and enter and order all appropriate relief, including for compensatory damages in the amount of $10,000, or as otherwise determined by a jury, and for reasonable attorneys' fees and costs of this suit.

## COUNT 6 – DEPRIVATION OF RIGHT TO BE FREE FROM UNLAWFUL SEIZURE UNDER THE FOURTH AMENDMENT VIA 42 U.S.C. § 1983
(Plaintiff Aracelis v. Defendant Pagani)

113.     Plaintiff restates, realleges, and incorporates by reference herein Paragraph one through 67 as if fully restated herein.

114.     On or about March 25, 2022, Defendant Pagani directed that Plaintiff's person be seized when she was in the Executive Director's office and taken to an adjacent room.

115.     Defendant Pagani was acting under color of law when she did so, ostensibly under the purview of her job duties as OPR investigator.

116.     Pagani and the other unknown individual, acting at Pagani's direction, then accompanied Plaintiff to the adjacent room.

117.     Plaintiff was at no time read her rights.

118.     Plaintiff was at no time advised why she was being seized.

119.     Plaintiff was required to remain in this room under the constant supervision of the unknown OPR employee and was not free to leave.

120.     Plaintiff's person was seized during this incident, without probable cause to do so and without having been read her rights.

121.     All of this was orchestrated and conduct by Defendant Pagani.

122.     Plaintiff suffered damages as a result of this seizure, including emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff Aracelis respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant Pagani, and enter and order all appropriate relief, including for compensatory damages in the amount of $10,000, or as otherwise determined by a jury, and for reasonable attorneys' fees and costs of this suit.

## COUNT 7 – INDEMNIFICATION
(Plaintiffs v. Cook County, Illinois)

123.     Plaintiffs restate, reallege, and incorporate by reference herein Paragraph one through 67 as if fully restated herein.

124.     Illinois statute provides that a local public entity such as Cook County, Illinois is obligated to assume financial responsibility for the actions committed by its officials or employees such as Thomas J. Dart and Scouffas. *See* 745 ILCS §§ 10/1-202, 10/2-302, and 10/9-102.

125.     Defendant Cook County, Illinois is obligated to assume such financial responsibility for the other Defendants hereto.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order directing Cook County, Illinois to pay, indemnify, and assume financial responsibility for the actions and/or omissions committed by Defendants for the harms they caused to Plaintiffs alleged herein.

**JURY DEMANDED**

*Dated:  January 9, 2024*

Respectfully submitted,

**DRAKE CARPENTER**
**ARACELIS GOTAY**

*/s/ Cass T. Casper*
By:_____
Plaintiffs' Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601

P: (312) 506-5511 ext. 331
E: ccasper@dispartilaw.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on January 9, 2024, he caused to be served a copy of

the foregoing document on the Cook County Sheriff's Office's Legal Department, to the email

address below, by emailing a copy before the hour of 11:59 p.m.

*/s/ Cass T. Casper*
By:_____

24