IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRAKE CARPENTER and ARACELIS GOTAY, ) ) ) Plaintiffs, ) ) vs. ) ) THOMAS J. DART, NICHOLAS SCOUFFAS, ) and the COUNTY OF COOK, ILLINOIS, ) ) Defendants. ) | Case No. 23 C 17019 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Drake Carpenter and Aracelis Gotay have filed suit against Sheriff Thomas J. Dart in his official capacity, Cook County Sheriff's Office's (CCSO) general counsel Nicholas Scouffas in his individual capacity, and Cook County, alleging claims arising from their placements on administrative leave and subsequent terminations. Defendants have moved to dismiss plaintiffs' operative complaint with prejudice. For the reasons stated below, the Court grants defendants' motion in part and denies it in part.

### Background

Carpenter and Gotay were employed with the Cook County Department of Corrections (DOC) within the CCSO for twenty-two years and fourteen years, respectively. At the time, Carpenter was DOC's Assistant Executive Director, and Gotay was DOC's Director for Incident Command. Before their appointment to those positions,

both plaintiffs were Correctional Sergeants.

Despite having no prior disciplinary incidents, Carpenter and Gotay were put on administrative leave without pay on March 25, 2022. They were informed separately that they were under investigation for misconduct in violation of CCSO's policies and procedures, but they were not told the nature of the investigation. Plaintiffs allege they heard a rumor of an investigation into officers working for a private security company, Blue Star Security, in addition to their official duties and effectively "double-dipping." Fourth Am. Compl. ¶ 71. Plaintiffs deny any involvement in such activity.

The plaintiffs' DOC positions—Assistant Executive Director and Director for Incident Command—are not listed as "merit ranks" for the Department, as designated by the CCSO's Merit Board (the Board). There were four designated merit ranks at the time of plaintiffs' placement on leave: (1) Correctional Captain, (2) Correctional Lieutenant, (3) Correctional Sergeant, and (4) Correctional Officer. Article IV of the Board's Rules and Regulations states that "[i]ndividuals serving in positions outside the above classified ranks will be exempt from merit classification." Defs.' Mot. to Dismiss, Ex. 1 at 10.

Carpenter and Gotay were appointed to their Director roles from their merit ranks of Correctional Sergeant. According to the Sheriff's Employment Action Manual (SEAM), "[t]o transfer back into a rank position, the employee must submit a request in writing to their respective department head." Cook County Sheriff's Office, *SEAM Article Z: Direct Appointment List* (June 1, 2023), https://cookcountysheriffil.gov/SEAM-

2

Article-Z-Direct-Appointment-List-updated-6-1-23.pdf.[1] Only if certain conditions are met will "a recommendation for the transfer . . . be forwarded to the Chief of Staff for final approval." *Id.* And if the transfer is "approved, the applicable collective bargaining agreement will be utilized to determine the pay, step, and assignment location" of the transferee. *Id.* Plaintiffs did not request a transfer back to their merit rank positions at any point after being appointed to their Director roles.

While on administrative leave, plaintiffs sought more information about the investigation into their misconduct but were unsuccessful. For example, two special agents from the Federal Bureau of Investigation interviewed Gotay in the fall of 2023 about high-level CCSO operations, as well as policies and procedures related to COVID-19 spending. Gotay did not get the impression that she was the target of the investigation. Still, through counsel, she emailed the FBI seeking information about the investigation. She did not receive a response. On September 29, 2023, Carpenter, through counsel, emailed general counsel Scouffas requesting information on the investigation and asked if he could return to work. Scouffas did not respond. And on March 12, 2024, plaintiffs, through counsel, emailed Blue Star Security seeking information on the alleged misconduct investigation. Blue Star Security responded that it had no information to give.

On December 22, 2023, after they had been on leave without pay for over twenty months, plaintiffs filed this lawsuit. They filed their fourth amended complaint (the

---

[1] Defendants note that plaintiffs cite in their complaint a version of the SEAM that was implemented after plaintiffs were put on administrative leave. Plaintiffs suggests the earlier version of the SEAM was substantially like the one cited in their complaint and ask the Court to obtain that version of the SEAM in discovery. The Court takes plaintiffs' allegations as true and analyzes the version of the SEAM cited in the complaint.

3

operative complaint) on April 29, 2024. Relevantly, plaintiffs filed their third amended complaint on March 24, 2024, adding for the first time claims under the Fair Labor Standards Act (FLSA), the Illinois Wage Payment and Collection Act (IWPCA), and for unjust enrichment. The new claims were based on allegations that Sheriff Dart forced employees at the DOC, including plaintiffs, to volunteer without pay for his reelection campaign to give him an unfair advantage over his opponents. Eleven days after filing their third amended complaint, plaintiffs received notices of involuntary termination, which included no explanations or descriptions of their alleged disciplinary conduct.

On June 27, 2024, defendants moved to dismiss plaintiffs' complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).[2] The remaining counts in plaintiffs' operative complaint are as follows: Counts 1 and 2 against Scouffas for deprivation of procedural due process for placing plaintiffs on administrative leave without a hearing; Counts 3 and 4 against Dart and Scouffas seeking a state writ of *certiorari* and declaratory judgment to reverse plaintiffs' leave status and to reinstate them to their former positions; Count 7 against Cook County seeking indemnification from the County for the liability of Scouffas and Dart; Count 8 for deprivation of protected property interests arising from Dart's failure to enact procedural safeguards and adopt policies to prevent the harm done to employees placed on administrative

---

[2] Plaintiffs have since dismissed a number of parties and claims from their operative complaint. Specifically, on August 30, 2024, the Court granted plaintiffs' motion to voluntarily dismiss Counts 9 (IWPCA), 10 (FLSA), and 11 (unjust enrichment) with prejudice. And on August 31, 2024, based on the parties' stipulation, the Court entered dismissed Counts 5 and 6 (unlawful seizure) and all claims against defendants Nicole Pagani and Friends of Dart. The Court does not address the dismissed parties or claims in this order.

4

leave without a hearing;[3] Counts 12 and 13 against Dart for First Amendment and FLSA retaliation for terminating plaintiffs for their exposure of unethical reelection campaign tactics in their third amended complaint; Counts 14 and 15 against Dart for deprivation of procedural due process based on plaintiffs' termination without a hearing; and Count 16 against Dart seeking a declaratory judgment under state law to the effect that plaintiffs are entitled to hearings before the Board.

## Discussion

To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege enough facts to state a claim to relief that is plausible on its face." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (internal quotation marks omitted). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.*

The Court groups the counts in plaintiffs' complaint in a logical fashion, as follows. Counts 1, 2, 14, 15, and 16 are based on allegations that plaintiffs' positions entitled them to a hearing before they were placed on leave or terminated. Counts 3 and 4 seek state law remedies for the alleged due process violations plaintiffs endured when they were placed on leave and terminated without a hearing. Count 8 is based on allegations that Sheriff Dart acted with deliberate indifference by failing to enact safeguards to protect employees like plaintiffs from the harm of being placed on prolonged administrative leaves without pay without a hearing. Counts 12 and 13 are based on allegations that plaintiffs were terminated in retaliation for adding claims to

---

[3] The Court grants plaintiffs' request to voluntarily dismiss their allegations related to the deprivation of liberty interests. *See* Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss at 13.

5

their third amended complaint related to the unethical practices associated with Dart's reelection campaign. And Count 7 concerns indemnification by Cook County for any liability imposed upon Scouffas and Dart.

A.  **Protected property rights claims (Counts 1, 2, 14, 15, and 16)**

Defendants argue that plaintiffs cannot assert viable claims for violations of due process because they were at will employees not entitled to hearings prior to being placed on administrative leave or terminated. The Due Process Clause of the Fourteenth Amendment forbids states from depriving "any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV § 1. "A procedural due process violation occurs when (1) conduct by someone acting under the color of state law; (2) deprives the plaintiff of a protected property interest; (3) without due process of law." *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011). Under Illinois law, a person has a property interest in her employment only where she "has a legitimate expectation of continued employment based on a legitimate claim of entitlement." *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1039 (7th Cir. 2021) (internal quotation marks omitted).

To show a legitimate expectation of continued employment, a plaintiff "must point to a state law, an ordinance, a contract, or some other understanding limiting the Sheriff's ability to discharge her." *Redd*, 663 F.3d at 296. Plaintiffs allege there are three sources that establish their property interest in their employment: (1) section 3-7012 of the Cook County Sheriff's Merit Board Act, (2) Article Z.3.5 of the SEAM, the DOC's employee handbook, and (3) deposition testimony from Robert Egan, a former CCSO compliance officer. The Court addresses each in turn.

6

### 1. Merit Board Act

Regarding the Merit Board Act, a "state statute may establish a property right to continued employment." *Kolman v. Sheahan*, 31 F.3d 429, 434 (7th Cir. 1994) (internal quotation marks omitted). Section 3-7012 of the Merit Board Act states:

> Except as is otherwise provided in this Division, . . . no employee in the County Department of Corrections shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board thereon upon not less than 10 days' notice at a place to be designated by the chairman thereof.

55 Ill. Comp. Stat. Ann. 5/3-7012.

Plaintiffs contend the protections found in the language, "no employee in the County Department of Corrections shall be removed, demoted or suspended except for cause," extended to them as Directors with the Department of Corrections. Plaintiffs' argument might be viable were the Court to read section 3-7012 on its own. But the Seventh Circuit has instructed that "it is necessary to go beyond the isolated statement from [section] 3-7012, and to view the entire statutory scheme." *Kolman*, 31 F.3d at 434.

The statutory scheme of the Merit Board Act calls into question plaintiffs' interpretation of section 3-7012. Specifically, section 3-7002 of the Merit Board Act creates the Cook County Sheriff's Merit Board. *See* 55 Ill. Comp. Stat. Ann. 5/3-7002. The Board is charged with establishing a "classification of ranks including those positions which shall be exempt from merit classification" and setting "standards and qualifications for each such rank and employee." 55 Ill. Comp. Stat. Ann. 5/3-7006. As indicated earlier, the Board designated four merit rank classifications for DOC employees (1) Correctional Captain, (2) Correctional Lieutenant, (3) Correctional Sergeant, and (4) Correctional Officer. The Board expressly states in Article IV of its

7

Rules and Regulations that "[i]ndividuals serving in positions outside the above classified ranks will be exempt from merit classification."  Defs.' Mot. to Dismiss, Ex. 1 at 10.

Plaintiffs were serving as Directors with DOC at the time they were placed on administrative leave and terminated.  In other words, they did not occupy one of the four merit rank roles, and thus they were exempt from merit classification at the time of their leave placement and termination.  Thus, in their Director positions, plaintiffs were not entitled to the protections for Department of Corrections employees found in section 3-7012 of the Merit Board Act.  *See Consolino v. Dart*, No. 17-CV-09011, 2019 WL 4450498, at *4 (N.D. Ill. Sept. 17, 2019) (finding plaintiffs could not establish a legitimate expectation of continued employment because section 3-7002 "only protects the ranks identified by the Merit Board, . . . and the Merit Board d[id] not recognize the rank of Commander").

    2.    Article Z.3.5 of the SEAM

Plaintiffs allege that, even if their Director roles were not protected by the Merit Board Act, their prior ranks of Correctional Sergeant were.  Plaintiffs rely on Article Z.3.5 of the SEAM to support their position that they retained their merit ranks while they served as Directors.

"Although Illinois law presumes that an employee hired for an indefinite period may be discharged at will for any reason, it also recognizes that employment handbooks have the potential to form contracts between employers and workers." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007).  "A handbook that contains a clear promise of continued employment gives rise to legal entitlements." *Id.*  Article Z.3.5 of

8

the SEAM provides instructions on how employees in appointed positions may transfer back to their merit rank positions. Plaintiffs contend that the option to transfer back to their merit ranks supports the interpretation that their merit ranks vested while they held their Director roles. They argue their interpretation is further supported by the fact that a transferee is not required to go through the stringent requirements necessary to earn a merit rank, unlike an employee who had never earned a merit rank in the past.

The Court is unpersuaded. If plaintiffs automatically retained their merit ranks while serving in their appointed Director positions, there would be no need to include in the SEAM instructions about transferring back to a merit rank position. This interpretation is supported by the fact that the SEAM does not guarantee that an appointee will be able to transfer back to a merit rank. According to Article Z.3.5, only if certain conditions are met will "a recommendation for the transfer . . . be forwarded to the Chief of Staff for final approval." Cook County Sheriff's Office, *SEAM Article Z: Direct Appointment List* (June 1, 2023), https://cookcountysheriffil.gov/SEAM-Article-Z-Direct-Appointment-List-updated-6-1-23.pdf. Further still, Article Z.3.5 states, "[i]f approved, the applicable collective bargaining agreement will be utilized to determine the pay, step, and assignment location." *Id.* In other words, nothing about the transferee's merit rank is predetermined.

Because Article Z.3.5 of the SEAM says nothing about employees in appointed positions retaining their merit ranks or about transfers from appointed positions back to merit rank roles being guaranteed and automatic, the Court cannot find that the DOC handbook qualifies as a contract that confers protectable due process property interests onto plaintiffs.

### 3. Deposition testimony

Plaintiffs contend that the deposition testimony of Egan, a former DOC compliance officer, confirms that they did not lose their merit ranks while serving as Directors. Egan testified that DOC employees lose their merit ranks only in a few instances, not including serving in appointed roles. Specifically, Egan was asked, "unless you retire or go through the Merit Board or die, you can't lose your merit rank; isn't that fair?" Fourth Am. Compl. ¶ 111. Egan answered, "[t]hat's correct." *Id*.

Egan's testimony does not support the weight plaintiffs place upon it. In context, Egan was asked about how employees *holding merit rank positions* could lose them. He was not presented with the example of an employee who accepted an appointment to a higher, non-merit rank position. Plaintiffs were not in merit rank roles when they were terminated. And Egan's deposition testimony does not suggest that they retained their merit rank roles when they accepted their appointed positions as Directors.

Because plaintiffs cannot establish a legitimate expectation of continued employment, they fail to state claims for procedural due process violations under the Fourteenth Amendment. The Court therefore dismisses Counts 1, 2, 14, and 15 of plaintiffs' operative complaint. Similarly, the Court dismisses Count 16, in which plaintiffs seek a declaratory judgment stating they are entitled to hearings before the Board. For these reasons, the Court need not reach the issue of qualified immunity.

### B. State law claims (Counts 3 and 4)

Defendants argue that plaintiffs' claims for state remedies fail because the claims are barred by their respective statutes of limitations. Plaintiffs seek a state law writ of *certiorari* and a declaratory judgment to reverse their administrative leave without pay

"as arbitrary and capricious, without a rational basis, and erroneous and mistaken, as well as to make them whole and order him reinstated." Fourth Am. Compl. ¶¶ 137, 144. Plaintiffs ask the Court to "enter and order all appropriate relief, including for reversal of [p]laintiffs' administrative leave status, reinstatement to their positions and/or Sergeant positions, and make whole relief in the amount of [p]laintiffs' lost salary and benefits." *Id.* at 27, 29.

### 1. Writ of *certiorari* claim (Count 3)

Defendants argue that plaintiffs' request for a writ of *certiorari* is untimely. Plaintiffs concede that the statute of limitations for a writ of *certiorari* is six months, running from the alleged wrong. See Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss at 21; *Tolbert v. Godinez*, 2020 IL App (4th) 180587, ¶ 24, 142 N.E.3d 415, 420. Plaintiffs filed their original complaint on December 22, 2023, and they were placed on administrative leave on March 25, 2022. Accordingly, their complaint was facially untimely.

Plaintiffs contend that their delay in filing their complaint resulted from the unusual nature of their administrative leave, which ran for more than twenty months. In effect, plaintiffs rely on the continuing violation doctrine and argue that, in effect, every day of their leave placement constituted a separate violation. "Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75, 85 (2003). "However, under the continuing tort or continuing violation rule, where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Id*. (internal quotation marks

11

omitted).

Plaintiffs do not argue for a particular date of their last injury. Based on plaintiffs' theory of being harmed "every day they remained in the administrative leave twilight zone," the Court assumes plaintiffs would argue their last injury occurred on April 4, 2024 when they were taken off leave and terminated. Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss at 22. Nevertheless, the Court sees no basis to apply the continuing violation doctrine here. "A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Feltmeier*, 207 Ill. 2d at 278, 798 N.E.2d at 85. "Thus, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Id*., 207 Ill. 2d at 279, 798 N.E.2d at 85. Here, plaintiffs' continued placement on leave without pay resulted from defendants' single overt act of initially placing plaintiffs on leave for reasons they alleged were mistaken, erroneous, or arbitrary and capricious. That act occurred on March 25, 2022, making plaintiffs' December 22, 2023 *certiorari* claim untimely.

### 2. Declaratory judgment claim (Count 4)

Defendants argue that plaintiffs' request for a state declaratory judgment should be dismissed as duplicative of plaintiffs' due process claims. The Court agrees. A court "retains discretion to dismiss a declaratory [judgment] action when it is duplicative of a plaintiff's other substantive claims." *Ruffin v. Seterus, Inc.*, No. 17 C 8849 , 2019 WL 1354468, at *5 (N.D. Ill. Mar. 26, 2019). Count 4 is based on plaintiffs' alleged "tangible interest" in their administrative leave placement, and mirrors Counts 1, 2, 14, and 15

which the Court has dismissed.  Fourth Am. Compl. ¶ 141.  Accordingly, Count 4 is dismissed as duplicative, and the Court need not address the timeliness of the claim.

**C.     *Monell* claim (Count 8)**

Defendants argue that plaintiffs cannot succeed in their *Monell* claim because they cannot show a deprivation of a federal right.  "A *Monell* plaintiff must establish that he suffered a deprivation of a federal right before municipal fault, deliberate indifference, and causation come into play."  *First Midwest Bank, Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021).

Plaintiffs allege that Dart's failure to establish procedural safeguards and policies deprived them of protected property interests while they were placed on administrative leave without pay for over twenty months.  It is true that "in situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable." *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986).  But, as the Court has previously determined, plaintiffs are unable to establish they have a protectable property interest in their continued employment.  The Court therefore dismisses Count 8.

**D.     Retaliation claims (Counts 12 and 13)**

Plaintiffs allege that Dart retaliated against them for filing their third amended complaint which included claims for FLSA, IWPCA, and unjust enrichment.  Defendants argue that plaintiffs cannot state a claim for First Amendment or FLSA retaliation.

"To make out a prima facie claim for a violation of First Amendment rights, public employees must present evidence that (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was at least a motivating factor in the employer's actions."  *Yahnke v. Kane County*, 823 F.3d

1066, 1070 (7th Cir. 2016). To sustain a claim of retaliation under the FLSA, "a plaintiff must plausibly allege that he engaged in activity protected under the Act, his employer took an adverse employment action against him, and a causal link exists between the two." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018).

Defendants contend that plaintiffs' First Amendment claim fails because the only reasonable inference is that plaintiffs were terminated for misconduct rather than the filing of their third amended complaint. There is no way that the Court could make such a determination based on plaintiffs' complaint alone, particularly when the standard for a Rule 12(b)(6) motion requires reading the complaint liberally and taking plaintiffs' factual allegations as true. Plaintiffs allege they were given no explanation for their termination other than a check mark under the "disciplinary" box on their notices of involuntary terminations. And they plausibly alleged a connection between their termination and their third amended complaint, even if all they have at this point is suspicious timing. Plaintiffs were terminated eleven days after they filed their third amended complaint, which contained allegations that, if true, would be damaging to Sheriff Dart.

For the same reason, the Court rejects defendants' contention that it is unreasonable to conclude that plaintiffs' third amended complaint was the cause for plaintiffs' termination because, as they contend, the third amended complaint was not materially different than prior iterations of the complaint. It is undisputed that plaintiffs included three new claims in their third amended complaint, including the FLSA claim.

Next, defendants argue that plaintiffs do not plausibly state a claim for retaliation under the FLSA because their underlying claim of a violation of the FLSA was not made in good faith. Specifically, defendants argue that plaintiffs knew or should have known

14

that the CCSO would not pay them wages for the hours they say they were forced to volunteer to do campaign work. But "[t]here is no requirement that [the FLSA] must actually be violated. It is sufficient that the plaintiff had a good-faith belief that [the FLSA] might be violated." *Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999). At the present stage, the Court cannot say that it is implausible that plaintiffs legitimately believed that Dart had violated the FLSA by forcing them and others to work on his reelection campaign without pay.

Finally, defendants argue that plaintiffs are policymakers and are thus exempt from First Amendment protections in this context. "[G]overnment employers may fire individuals in policymaking jobs solely because of their political affiliation." *Embry v. City of Calumet City*, 701 F.3d 231, 235 (7th Cir. 2012). An "employee holds a policymaking position when the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* (internal quotation marks omitted).

Though the Court has found that plaintiffs' Director roles were not within the merit ranks of the CCSO, the allegations in plaintiffs' complaint do not establish, as a matter of law, that their positions were policymaking positions. To determine that issue, a court must assess several factors, including whether the employee exercised broad discretionary power, the powers inherit in the office, and whether the employee had responsibilities that were not well defined or were broad in scope. *See id.* at 235–36. There is no conceivable way that the Court could make this determination at the pleading stage on the record as it exists.

Thus, the Court denies defendants' motion to dismiss Counts 12 and 13 of

plaintiffs' complaint. Accordingly, Count 7 (plaintiffs' claim for indemnification by Cook County) is not dismissed because plaintiffs have viable underlying claims that might bring indemnification into play. *See* 745 Ill. Comp. Stat. Ann. 10/9-102.

## Conclusion

For the reasons stated above, the Court dismisses Counts 1 through 4, 8, and 14 through 16 of plaintiffs' operative complaint with prejudice and also dismisses defendant Scouffas as a party. The remaining defendants are directed to answer the remaining claims by November 27, 2024.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 7, 2024